UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

JUNKO TOYAMA,

                               Plaintiff,

-against-

HASAKI RESTAURANT, INC.,

                               Defendant.

------------------------------------------------------------- X

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

13 Civ. 4892 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

      Plaintiff Junko Toyama brought this action against her former employer, Defendant Hasaki Restaurant, Inc. and its owners, for sexual harassment under Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law ("NYSHRL"). Plaintiff worked as a waitress at Hasaki from November, 2011 until February, 2013. Plaintiff alleged that the behavior of her co-workers created a hostile work environment and resulted in her constructive discharge from her employment as a waitress.

      Defendants have moved for summary judgment at the conclusion of discovery pursuant to Fed. R. Civ. P. 56. The evidence in the record, including Plaintiff's own deposition testimony, contradicts most of her allegations. Meanwhile, Plaintiff's opposition brief fails to include even a single citation to evidence in the record. Instead, Plaintiff submits a nineteen-page declaration attesting to her version of the facts while completely ignoring the extensive discovery already conducted in this case. Based on the record before me, I find that no reasonable juror could decide Plaintiff's Title VII claim in her favor. And without any federal claims remaining, I decline to exercise jurisdiction over Plaintiff's remaining state law claims. Accordingly, Defendants' motion for summary judgment is granted and the complaint is dismissed.

## LEGAL STANDARD

A. *Summary Judgment*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005). Ordinarily, the court's job is not to weigh the evidence, but rather to determine whether there is a genuine issue for trial. *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In addition, it is "well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment. *Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987). "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969).

B. *Hostile Work Environment*

A defendant violates Title VII's prohibition on hostile work environments when its conduct:

> (1) Is sufficiently severe or pervasive that a reasonable person would find the work environment hostile or abusive;

2

>  (2) Creates an environment that the plaintiff subjectively perceives as hostile or abusive; and
>
>  (3) Creates such an environment because of the plaintiff's sex.

*Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007). However, Title VII does not create "a general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 80 (1998). To survive summary judgment, the plaintiff must establish that the workplace was "permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). "Isolated incidents generally will not suffice to establish a hostile work environment unless they are extraordinarily severe." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537 (2d Cir. 2010). *See also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.").

C. *Constructive Discharge*

"Where an alleged constructive discharge stems from an alleged hostile work environment, a plaintiff must show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010) (internal quotations omitted). This standard is higher than that for a hostile work environment, *id.*, and requires the employee to show deliberate action by the employer rather than mere negligence or ineffectiveness. *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 74 (2d Cir. 2000).

## PLAINTIFF'S ALLEGATIONS

Plaintiff's claims are based on the following allegations:

3

1. A chef named Juan Carlos Miguel ("Carlos") "peeped" on Plaintiff while she was changing out of her work clothes in the waitresses' changing room;

2. Carlos gave massages to other waitresses.

3. The Mexican kitchen employees catcalled and insulted Plaintiff.

4. A kitchen employee named Pedro Enrique Cid ("Pedro") rubbed his pelvis against Plaintiff's back.

1. *Alleged Peeping Incident*

Plaintiff alleges that Carlos secretly spied on her while she was changing out of her uniform on the afternoon of May 15, 2012. Pechman Ex. F, ¶ 9. However, Plaintiff admitted in her deposition that she closed the door to the changing room, Toyama Tr. 75: 18-19, that she did not actually see Carlos peeping, *id.* at 77:11-13, and that there was indeed "no evidence" that Carlos was actually peeping. *Id.* at 81:14-22. She also testified that she only assumed Carlos was spying on her—through the quarter-inch space near the handle where the door was sometimes not flush to the frame—because Carlos was outside when she exited and appeared surprised when she opened the door. *Id.* at 76: 22-25, 77: 14-15.

These facts would not permit a reasonable juror to find that Carlos was peeping, and even if they could, Carlos is not a defendant. Where, as here, a co-employee is the harasser, "an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action." *Petrosino v. Bell Atl.*, 385 F.3d 210, 224 (2d Cir. 2004); *Faragher*, 524 U.S. at 789. In this case, Plaintiff testified that she never reported the alleged peeping incident to her superiors or to anyone else. Toyama Tr. 79:25-80:9. There is therefore no evidence to support a charge that Defendants knew of the incident.

4

2. *Carlos's Massages*

Plaintiff alleges that Carlos gave massages to other waitresses, which made her feel uncomfortable and fear that he would touch her also. These occurrences are not disputed. However, they are also not relevant. The record shows that Carlos only gave massages to co-workers when they asked him for a massage, Carlos Tr. 65:10-12, 66:13-14, and Plaintiff personally observed that the other waitresses were "okay" with getting massages. Tomaya Tr. 118:15-24. Plaintiff testified that Carlos never asked Plaintiff if she wanted a massage, *Id.* at 108:14-25, nor had any conversation with Plaintiff about a massage. *Id.* at 121:4-6. She testified that Carlos never gave Plaintiff a massage, *id.* at 102:7-18, nor did he ever even touch Plaintiff. *Id.* at 102:14-18.

Plaintiff's aversion to other people receiving massages does not constitute a sexually hostile environment, as she alleges. Furthermore, and more importantly, after learning that massages made Plaintiff uncomfortable, Defendant forbade massages in the workplace. Yagi Tr. 197:23-198:7 ("Once we found . . . out that somebody felt uncomfortable about it, we took measures to prohibit any more massages. . . . [T]he waitresses were enjoying the massages, they were having a good time. But we prohibited it regardless.").

3. *Catcalls and Insults*

Plaintiff alleges that the kitchen staff subjected Plaintiff to daily catcalls, insults, and teasing, which made her feel uncomfortable and fearful. The evidence does not support her allegations. Plaintiff testified that she heard catcalls only three to five times during the time she worked at Hasaki. Tomaya Tr. 317:2. She also testified that the catcalls were not actually words, but merely a sucking noise that sounded like "shhh." *Id.* at 313:8-11, 320:3-26. She thought that maybe two Hasaki employees made the noise, but does not know who they were nor ever spoke to them. *Id.* at 317:19-25.

5

Plaintiff also testified that she was called "puta and some other Spanish bad words." *Id.* at 301:9-19. However, she testified that she did not know what the words meant, that she does not speak Spanish, that she did not actually know what the employees were saying, and she could not even explain how she knew that they were talking about her. *Id.* at 211:22-23, 302:8. When asked, she could not even specify how she knew that they were talking about her. *Id.* at 302:13. Thus, the "insults" section of Plaintiff's complaint boils down to a single incident: being called "bakayaro" on February 3, 2013. "Bakayaro" is a Japanese word that translates to "stupid," Pl. Br. 2, and it was uttered by a kitchen worker after Plaintiff mistakenly ordered four orders of tempura, subsequently voiding three of them. Tomaya Tr. 205:8-22, 212:4-21, 218:17-25, 220:9-12. But regardless of whether this incident indeed occurred as Plaintiff says, it is not relevant to her case. Title VII is not a general civility code for the workplace. *Oncale*, 523 U.S. at 80.

4. *Sexual Assault*

The only incident that supports Plaintiff's harassment claim is an inappropriate touching that occurred on January 20, 2013. Plantiff testified that Pedro "came up behind her and put his body against me from my back and rub his pelvis against my back." Toyama Tr. 251:19-22. Pedro testified that he bumped into Toyama by accident, Pedro Tr. 57:23-25. Although at this stage I must draw all reasonable inferences in favor of [the non-moving] party," *Amnesty Am. v. Town of West Hartford,* 361 F.3d 113, 122 (2d Cir. 2004), the incident was isolated, and as such it would not be sufficient to support Plaintiff's claims. *See, e.g.*, *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998) (dismissing hostile work environment claim where a supervisor told a female employee that she had been voted the "sleekest ass in the office" and deliberately touched her breasts with papers that he was holding in his hand. Although the

6

incident was severe, Plaintiff could not show that the harassment was also pervasive as the law requires.).

Further, even if the alleged inappropriate touching were sufficient on its own, Defendants would still not be liable for it. Pedro is not a defendant in this case and Plaintiff has not offered any evidence that imputes the alleged harassment to Hasaki. In fact, the same day the incident occurred, Plaintiff's supervisor spoke to the kitchen employees and instructed them not to touch Plaintiff or other restaurant employees. Nakata Tr. 87:8-24. The supervisor also admonished Pedro directly. *See* Pedro Tr. 69:9-10. Pedro was never again given the same work schedule as Plaintiff, and indeed Plaintiff never saw Pedro again after that day. Toyama Tr. 323:5-8. Given these facts, no reasonable juror could find that Hasaki "provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Kotcher v. Rosa & Sullivan Appliance Ctr.*, 957 F.2d 59, 63 (2d Cir. 1992).

## DISCUSSION

As discussed above, the allegations in Plaintiff's complaint are either contradicted by Plaintiff's own testimony or irrelevant to her sexual harassment claims. Plaintiff's Declaration, prepared in response to Defendants' motion, is full of contradictions and does not create any genuine issues of fact that would permit this case to reach a jury.[1] Accordingly, I find that Plaintiff cannot meet Title VII's requirements for a hostile work environment as a matter of law, let alone the stricter requirements for a constructive discharge claim. I do not need to reach

---

[1] Plaintiff submitted her declaration "to explain she [she] meant in giving [her] answers, and [she] sometimes misunderstood the question, [she] sometimes used the wrong word, and [she] sometimes stated something that was different than what [she] really meant, because [she is] not a native English speaker." Toyama Decl. ¶ 6. However, Plaintiff testified at her deposition that she understood English and was "fluent enough to deal with things, Toyama Tr. 13:22-24, 123:9-12. She testified under oath, and notably did not submit a deposition errata sheet to clarify any of her testimony.

the other contested issues of Plaintiff's actual damages or her failure to mitigate by choosing not to apply for any other jobs.

Having dismissed all of Plaintiff's federal claims, I decline to exercise jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(a). Accordingly, Plaintiff's sexual harassment claims under the New York State Human Rights Law are also dismissed.

## CONCLUSION

Defendants' motion for summary judgment is granted. The Clerk shall grant judgment to Defendants, dismissing the complaint with prejudice, and shall mark the motion (Doc. No. 11) terminated and the case closed.

SO ORDERED.

Dated: December 18, 2014
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge